010-2313 Emily Green v. Chicago Board of Education Good morning, Justices. Stephen Muslin on behalf of Emily Green, the Special Administratrix of Rubin-Ivey. This case, I believe, should be reversed because the position taken by the defense here is that this case Excuse me, Counsel, would you say your name once? Stephen Muslin, M-U-S-L-I-N Thank you This case should be reversed because the position taken by the defense is in a total different posture than the position pled and taken as true for the purposes of pleading that the plaintiff put forward. This is a case where a young man was killed outside of Crane High School. He was a public school student. We have pled that the Board of Ed was fully aware that there were dangers in the area, that there were dangers near the school, that students had been shot. And additionally, what we pled, and more importantly, is on this specific particular day, there had been a problem in the school with certain children. They sent those children home, and then at the time that school was going to be discharged or released, the rest of the students, they noticed that the people who they had sent home were back, and there was a mob outside of the school armed with golf clubs that they could see and other weapons that they could see. And certainly they had reason to believe that if these people were there with these kind of weapons, there was a danger to the students that were in the school. Our position is that their willful and wanton conduct was not – we're not saying they should have had a police force. We're not saying they should have provided security. We are saying that all the things that we pled regarding the conditions that were there, the – shows knowledge. But on this particular day, what they did that was willful and wanton, known risk which they disregarded was they let students out into a mob that was armed with weapons, and as a result of that, Mr. Ivey was killed. Counsel, on page 7 of your brief, you say, students were required to leave the school into a condition on the premises that exposed those students to unnecessary dangers. Is that the crux of what you're complaining – what you say constitutes the willful and wanton conduct? Yes, it is. The crux of our position is the Board of Ed was aware of the danger. They were aware of this specific danger. This wasn't like some of the other cases where there's a general danger that's known and it's not to any specific group of people on any specific day. This is on a specific day. These dangers were known. They saw the people out there armed with clubs, with golf clubs, with other items, and they had known of the dangerousness of the neighborhood, and they chose to release the students into that situation. Let me change the facts just a little bit, just hypothetically. Go ahead. If Devante Smith or whatever the killer's name was had shot Mr. Ivey inside the school before they were released, would that change the circumstances? Would we be here? Well, I would have to say that that hypothetical to me is incomplete. I don't know. That's my hypothetical. Oh, I know. That's what I'm saying. But what I'm saying is I don't know the facts surrounding it. If he had come to school, if they had had metal detectors like they said, even if he brought a weapon in through those metal detectors and he shot them inside the school and they – I don't know whether we'd be here, to be quite honest with you. I don't know whether that would have been 100 percent actionable, or they'd take the same position and say, well, you know, we don't have to provide security. Even though we voluntarily undertook to put a metal detector in, even though we voluntarily had security, we can't stop everything. I don't know whether that would be actionable. How I see this case is closer to a premises liability case than to a failure to provide police protection or security case. They – the Chicago Board of Ed has – Well, how so? Because if there was police protection there, I guess your argument has to be that but for the lack of some protection or some other force to either disperse this mob or keep the students safe, this wouldn't have happened. So isn't that police protection or something similar to that? I don't believe so, because I believe that the action that could have been taken to not have deliberately disregarded a known risk was just to keep the students in school till it was safe to allow them to leave. Now, if it took, then, the police dispersing the mob before you allow the people out of school, the but-for part isn't the police dispersing the mob or the failure of the police dispersing the mob. The but-for in the proximate clause is allowing the students to be sent out into this armed mob without any – I'm not asking that they be protected by physically being protected. I'm asking that the protection which is necessary and the willful failure to provide it is the injury here is that they just let them out of the school knowing what was out there. Mr. Muslin? Yes. Excuse me for interrupting. Sure. But where exactly did this happen? At Crane High School. Where was this decedent located? He got shot about – Was it on the sidewalk or stairways or where? It was on the sidewalk as he was – I think it was on the sidewalk or the street as he was running from the mob after they had been let out of school. Maybe a half a block down. A half a block down? Maybe. On the public sidewalk, not on the school property? I don't recall whether he was shot on the public sidewalk or he was shot on school property and, I'm sorry, fell on the public sidewalk about a half a block away. Okay. But where this happened doesn't make any difference in your argument, does it? I don't think it does. If this happened two blocks away, your argument would be the same. Absolutely. I think that – So how long does this duty extend until he gets safely in his home? Oh, no. I think the duty – if the duty was breached when they let him out into the mob, the fact that he – it took the mob, say, even a half a block to shoot him or a member of the mob to shoot him and had – also, I think he was struck. I don't think that that changes anything. I think the duty exists when the student is in the school and the school people are aware of what's outside and they say, okay, here, guys, go head out there. That's why I see it as – I don't believe it would have made a difference. Counsel. I'm sorry. Can I ask you the Thames case, or Thames, I'm not sure how it's pronounced, cited in your brief, which says that the determinative factor for finding direct and immediate control is whether the public official is responsible for the occurrence which gave rise to the need for protection. Okay. This goes sort of hand-in-hand with the holding in Doe and DeSmet where they say, well, you have to know the specific individual that had control over the condition or the cause. In this case, after this was dismissed and while the appeal was pending, we sought to stay the appeal to file an amended complaint naming the individual who had actual physical control, which was, I believe, the principal. We didn't know his name before. But I don't think that really should matter. It's not – this would be an agency case. It's clearly within the scope of the municipal employee's employment to protect or not protect, to keep them in school to be safe. So the fact that we don't know the specific individual, I don't think that matters. So you distinguish the things. I do. Thank you, sir. Any other questions? With respect to the – oh, I'm sorry. So how do you get around the absolute immunity? Well, that's the – I don't believe that the absolute immunity in 4102 applies. The absolute immunity in 4102 applies to stopping a crime, providing a police force, providing adequate security. In this case – and they keep using – I mean, that comes up almost in every municipal case now, that anybody gets hurt or there could have been a policeman nearby, they start saying, oh, 4102 trumps everything. Well, 4102, I don't believe, does trump anything. I think under certain circumstances it's absolute immunity. And I think 4102 is never intended to trump a situation like this. 4102 is if you don't create a police force or the police department doesn't stop a crime or arrest somebody before they commit a crime. That's what I think 4102 is intended to do. And, you know, we also have the issue here of special duty, just to touch on it. Although Zimmerman talks about special duty – I don't believe that the cases where the immunity has given rise were pled in the same way that this case was pled, and that is the fact that the breach in our case, as we see it,  was the failure to keep the children safely in school. Not to provide a security force, not to have a security at the school, even though they had voluntarily undertaken. Our case was pled as, like I said, closer to a premises liability case. The only difference – one of the only differences, because they are a public school, municipal, they get the benefit of Willful and Wanton, of 202. And we have the proof that they were Willful and Wanton and not just reckless. And I believe, based on the way we pled the case, it should have been allowed to proceed to see whether or not we could have proven that. I don't believe this – What was pled that brings this into Willful and Wanton? The knowingly disregard from the fact that, in our case, we pled the knowledge that there were – we pled – The court dismissed this under 619, the – Sort of a hybrid. Subsection 9. Right. Sort of a hybrid. The court himself believed that it should have been reversed. He said he only hopes that the appellate court reverses him if you – obviously, when you read the transcript, you saw that he had to say. Because he believed, although he believed 4102 was applicable, he did not believe that was a fair result. And back to your original question, our pleadings indicate throughout that not only was the school – the school board generally aware of the problems, but the specific school was aware of the dangers in the area. And on this particular day, they were aware of students being sent home for fights and students being standing out on the steps of the school at the time of release with weapons. To allow people out into that isn't a knowing disregard, a reckless disregard of a known risk. That's Willful and Wanton. Mr. Muzzolin. Yes. When the students were dismissed, were they required to leave the school? You know, I read – I can't remember that particular part of the facts from the briefs. But in some situations when the students are dismissed, they have to leave the school immediately. Was that the case here? Or is it, you know, school's out now, so you can leave or not? No, I believe that the school's a locked school, although we haven't been able to develop that fully in discovery because the case was dismissed at the pleading stage before even an answer was filed, I believe. But I think this is a locked school, Crane High School. That means that once the students are there, they're kept within the school. The doors are locked because of the nature of the community, because of the problems they've had in the school. So people just can't come in and out. And when school's over, they have to leave. So the door is unlocked and they have to – that's – They're basically sent out. So is it – do they have to leave or they can leave if they want to? It's my understanding, and like I said, this hadn't been developed because we had no discovery, but it was my understanding that they had to leave and then the doors are locked behind them once they left. Okay. Counsel, what is the exact proximity to the school where you say persons were there with weapons? They were right out on the steps in front of the school. So on the school property, on the steps. Yes, yes. And what weapons are you describing? We were told that – we pled that they had – for sure there were golf clubs seen. Well, we know they had weapons, although I don't know – I mean, guns. I don't know if they could be seen, but we know they were there because they were used. What was seen? Do you know what was observed? Yes, if you give me a second, I'll find you exactly what – for sure golf clubs. And we can assume they weren't there to play golf. I would think not. The more that you describe the situation, it seems to me the more compelling is the fact that you're real, although you don't want to say it, that your real complaint is that the board failed to police the situation. I don't think that that's correct. Well, it depends on what your definition of police is. It's not to police the situation. It's to maintain the status quo until the situation either abided – left naturally or, yes, then the Chicago police – we're not suing the Chicago Police Department for failing to disperse the crowd. We're saying that you – the board didn't keep these kids safe. Well, clearly the board's not under a duty to police. And I – we have not said that. And we wouldn't – we would not be saying that. But they certainly, we believe, are under a duty to maintain the status quo and not send lambs out to the slaughter. Perhaps wait until the wolves are dispersed before you send them out. Mr. Milton, following up on Justice Harris's question, although you clearly don't want to use the word – the term failure to police the situation because that would defeat your claim. But it seems to me that if there were school security people or armed guards or Chicago police officers or whomever who constitutes a, quote, police presence on those – on the steps of that school at the time, these armed thugs probably would have been dispersed. Do you agree or not agree with that? If there was a police – a school police force or a security that would have been dispersed, that could have been the case. Well, isn't that a situation where the failure to provide that is a failure to police the situation, as Justice Harris just asked you? I think that I don't agree. And the reason I don't agree is it brings me to the long-form definition of proximate cause. While the – and I don't believe that the board had the duty to disperse them, but the Chicago Police Department would have come and dispersed them eventually. The question is because there was police officers who actually showed up there. But the fact of the matter is all they had to do was to maintain the status quo and not let the students out into this armed mob, which, to answer Justice Conner's question, is we pled in paragraph O that on March 7th prior criminal attacks had occurred on defendants' premises and that the Board of Ed has confiscated weapons, including guns, that were found to be in possession of the students upon school property. And on that day there was at least – at least golf clubs. And I can't find the other items that were there, but they are in our pleading. Again, I know this is – our position is that this was – Let me ask you one last question, and I'm going to ask your opponent, too. What was the legislative intent in enacting 4102? I think the legislative intent in enacting 4102 was to not put an onus on police officers or people who – to stop crimes. That's what I think the immunity is. The immunity is so that if you're – if there's a police officer standing on the corner and then someone gets raped across the street here, you can't say, oh, my God, I'm suing that police officer because he didn't stop this crime. And also that people don't have to provide police protection or create police departments. I believe that was the legislative intent of 4102. I think 4102 has been stretched about as far as it can be stretched to provide protection for other municipal corporations. But I don't believe that was really the intent of 4102. Thank you. Thank you, Mr. Nelson. Counsel for the defendant. May it please the court, counsel, my name is Tara Alhaffan, A-L-H-O-F as in Frank, E-N, and I represent the Board of Education of the City of Chicago. 4102 of the Tort Immunity Act applies to the facts of this case. Appellant has effectively fled herself right in the path of 4102. 4102 completely immunizes local public entities and their employees against liability for failing to provide or inadequately providing police protection or services. Appellant's factual allegations contained in the complaint directly describe the system-wide and school-based security measures that had been in place in the days leading up to Ivy's death. What about the specific allegation that there was a mob gathered on the steps, armed with weapons, right outside the school? You think the school had no obligation or duty to keep the students from being dispersed into or dismissed into that mob? As far as your argument that the school has no obligation, although this mob was there armed with weapons, well, it's 3 o'clock, it's time to go, out to go into the mob. Is that the position? That is not the board's position. The board's position is that if Appellant is asserting that 3108 is somehow an exception to 4102 due to the board's willful and wanton failure to supervise dismissal, 201 of the Tort Immunity Act applies immunity to the board in that instance because dismissal is constituted the exercise of discretion. What does that mean in English? Dismissal is constituted the exercise of discretion. What does that mean? There are certain factors that would have to come into play if the school decided not to dismiss the students at the same time, such as organizational issues, making sure that parents were notified if they were going to. But if there's a mob, that's not one of the factors that the school has to. If there is a mob armed outside the school, that's not one of the discretionary factors that the school has to consider. Is that what you're saying? I think it would have to be considered, but in light of all the police protection services that the school had in place at the time, they did everything that they could. Well, evidently they didn't because somebody got killed, but that's another question. My narrow question is, under the elements that you have just described, are you saying that the school has discretion to ignore the fact that there is a mob gathered on the steps of the school and dismiss students into that mob anyway, and they're completely immunized if they do that? Is that your argument? No, and the students could have stayed in school. They weren't forced out of the school and thrown out onto the street in the face of a mob. That did not happen, nor has plaintiff alleged that. The question that I asked Mr. Moslin, you know, it wasn't clear to me from reading the briefs, and I can't recall if that was described. When the bell rings and it's time to go, do they have to go, or can they stay in school until whatever is roiling around outside quiets down? Is that discretionary with the student, or does the school authority say, bell's rung, it's time to go, I don't care who's outside. You know, if there's a tank outside, you still have to go. That was not the case. The students were not thrown out of the school when the bell rang at dismissal time. The school has authority to keep the students there. The students can make the decision on their own to stay there if there's a danger outside. They were not forced outside of the school. They were dismissed. Correct. And generally speaking, after dismissal, the school has no further duty. Am I correct? That's true, yes. Okay. However, the appellant alleges that a duty was breached prior to dismissal in the board acting unreasonably, and now in oral argument, willfully and wantonly, and not recognizing the situation and dismissing. Is that logical? No, and it appears to me that appellant has the only duty that he's saying that the board breached is the duty to protect and guard against criminal activity, and 4102 directly immunizes the board from that. Plaintiff can call it, try to call it now, whatever he wants. All of his allegations fit right into what 4102 immunity is supposed to protect against. And what was the legislative intent, in your opinion, in enacting 4102? To limit liability of local public entities and their employees, to protect government funds from being expended when certain measures are taken to protect people, because the board and other local public entities can't prevent everything bad from happening. There are certain things that they can do, and they do them, but this conduct falls right within 4102, based on appellant's own factual allegations regarding the drastic security measures that were taken at the school and system-wide throughout Chicago Public Schools. Can I ask you what's suggested by your opposing counsel, that this 4102 applies only maybe to police departments, police forces? No, it applies to general police presence, and in Lawson, which was a similar case, it applied to schools as far as metal detectors were concerned. So just because we're not the Chicago Police Department, does not affect 4102 immunity applying to the board, a local public entity. Do you have no further questions? Was their complaint adequate to show a willful and wanton act on the board prior to dismissal? Do you think there were sufficient facts, or they were insufficient? I believe they were insufficient facts. And again, all the facts that were alleged pertains directly to a police presence and the security measures that had been taken at the school. So 4102 would apply to anything that occurred before dismissal as well. Thank you, counsel. There's something to finish early. Okay, thanks. Brief rebuttal, please. Very briefly. Briefly, sir, could you tell me what facts in your complaint substantiate your claim of the failure to supervise properly prior to the dismissal? We pled that there was knowledge of the neighborhood. We pled that there was knowledge of the competing gangs in the school, that there had been prior problems with the competing gangs within the school that came from the two different neighborhoods. The competing gangs, one was from the Alba homes, one was from Rockwell, and that was part of the problem. We also pled that on this particular, that there had been weapons in the school. We pled that they were completely, the school district and the board was, and the people in this school were completely knowledgeable about those facts which were present. We pled that on this particular day, there had been a fight in the school between these two rival factions, that one of the rival factions had been sent out of the school and not allowed back in, and then at 3 o'clock or whatever time they were to be dismissed, the school was uniquely aware, actually aware of the presence of the people they had thrown out for fighting now being back on the porch of the school or the steps and the property of the school with golf clubs and other weapons. We pled that in spite of this, knowing that this danger existed, they deliberately disregarded it and dismissed the students out to the school. Just as an aside, Judge Lawrence complimented, my partner did the complaint, Mr. Sandberg complimented him on the well-pled facts in our second amended complaint, which was the complaint which was dismissed. And going back to what counsel is saying is that we insufficiently pled, Judge Lawrence did not dismiss it on insufficient pleading. He dismissed it on the 4102 issue. We pled sufficient facts, which as you know, well-pled facts are taken as true for the purpose of pleading. And based on that, we pled sufficient facts for willful and wanton failure to supervise situation here. I'm sorry. No, go ahead. Counsel, let me ask you, what you just described a minute ago as far as what happens, sadly happens on a daily basis in Chicago public school system, especially in the high schools relative to gang activity and people being dismissed and those kind of things. Does it not? Well, a portion of what I said happens all the time. And we didn't plead it to say they have some specific duty with respect to protecting someone every single day. What we pled that for was to plead the knowledge that we believed we would be able to prove in a trial that existed that coupled with the specific event of this day made it, I guess, more egregious. Not, you know, we're not saying that every single day everybody has to be walked to their cars or, you know, anything like that happens. What we're saying is that on a given day when you have a mob carrying weapons and those people were the leaders of that mob were thrown out of school for fighting that specific day, to allow the dismissal of the other children into that mob is deliberately disregarding a known risk. What do you say in response to your colleague, your opponent's argument that 4102 is complete immunity? I mean, you're arguing that the factual situation that occurred and which you pled brought it into some sort of exception. But respond to that argument that there is no exception. This is complete immunity, especially under the facts that you pled. Can you respond to that? Sure. If I can look at it, give me a second to find where we are. Well, here's what 4102 says, and I'm sure you're aware of it. Neither a local public entity nor a public employee is liable for failure to establish a police department. We aren't saying that they didn't establish a police department, or otherwise to provide police protection service, or if police protection is provided for failure to provide adequate police protection or service or failure to prevent the commission of crimes, detect or solve crimes, and failure to identify or apprehend criminals. That's not applicable here. Why not? Because this is not a case about failing to create a police department. What about preventing a crime? That wouldn't be applicable because if the crime hadn't occurred, we wouldn't be here. So essentially, the school, under your factual assertions, the school, by allowing the kids out into that mob situation, they failed to prevent the commission of a crime. Isn't that right? I don't believe that's true at all. I believe that if we had pled that the Chicago school police force or the Chicago police force or the school security force went out there and attempted to stop it and couldn't stop someone from getting shot, then, yes, 4102 would be applicable. But that's not the cause here. That's not what happened. The cause is, as Justice Harris said, the dismissal. The breach of the duty occurred. He didn't say that. You said that. He asked the question about wouldn't the breach have happened then. Well, I agree that that's when it would have happened. The breach happened before the crime was committed, and it didn't happen because the police failed to commit, that any police force was created or police protection was failed. It happened because the Board of Ed chose to release people out into a, this known situation of danger. Mr. Muslin. Yes. 4102 is very broad. Oh, I understand that. It's very broad. And admittedly, it expressly provides immunity for failure to provide adequate police protection or to prevent the commission of crimes. Now, how can we turn a blind eye to that? I'm not asking you to turn a blind eye to it. And why is it not applicable? I don't believe that in this case, as I've said, and I, again, don't mean to belabor the point, I don't believe that the breach of duty which gave rise, which was the proximate cause of this injury and death, was the failure to provide police protection. It was a failure to supervise students and let them out of the school. Failure to prevent the commission of a crime. Again, I don't see this as the school's failure to prevent the commission of a crime. I don't believe that that, what they did, I suppose we're, what I'm trying to say is that while I understand 4102 is very broad and has been applied from the plaintiff's view ad nauseum, but it is the law, I don't believe it's applicable here because I don't believe it was ever intended. And I'm not asking you to turn a blind eye to it. I'm not, I don't believe it was ever intended to apply to a situation like this. I believe it was intended and even has been carried forward to the point of, like this is more, this is closer to the facts in, I forget if it's Doe or DeCimet, where that police officer was outside, had control of the situation, and then chose not to go in to stop the rape. And they held that 4102 did not bar that complaint. It was the appellate court reversed in that case, but they knew who the actor was, the specific police officer who had control. This is closer to that situation than it is to all the other situations which talk about the failure to provide police protection because this is a situation where, I'm sorry. Counsel, assume that we're not even talking about police protection here. As Justice Harris says, just look at the narrow part of the statute that refers to the failure to prevent commission of a crime. If the crime had been prevented, we wouldn't be here. So that's the part of the statute that really applies to your factual situation, not the police protection necessarily. The prevention of, if they had remained in the school, under your theory, then the crime wouldn't have occurred because. And if it had occurred, it wouldn't have been at the fault of the Board of Ed. If it happened an hour later, two hours later. But essentially, you're arguing that the Board failed to prevent this crime from occurring, causing the death of the plaintiff's decedent. And that is covered. I don't know how you get around that. You see, assuming that we agree with you, we have to write an opinion. I understand. How do we write an opinion that gets around the breadth of this statute? And I asked you about the legislative intent. You have a different interpretation than your opponent. But we have to write something. We can't say, well, we agree with this lawyer because we like his argument. You know, it seems like a good argument to us. How do we write a legal opinion that gets around the breadth of 4102? It is a very broad statute designed to provide complete immunity, just as your opponent says. How do we get around this? Then I would suppose, and I don't think 4102 goes this far, that any time there is a crime which is at a public, through a public situation, then regardless of what was the actual cause of the injury, well, the actual cause in this case was him being shot. I understand that. And that's a crime. Well, let me, I can't think of an analogy, to be honest, where you would be able to say that an injury occurs and it's not a crime that would not be covered under 4102. And, again, I wasn't talking about a specific police thing when I was talking about DeSomet or Doe v. Calumet. That is just, that was applied. It doesn't matter if it was a police officer or the person that opened the doors from the school and let the kids out. According to that carve-out of 4102, and that's been held to be a carve-out of 4102, when an individual had control of the situation and acted in a willful and wanton manner, the failing to prevent the crime was not a bar. That's what happened in the case that I talked to you about. And that's why I believe that if you want to, you know, obviously 4102 is there and if you find it to be applicable, the way around it that the courts have allowed is exactly what they did, and I forget if it's DeSomet or Doe, where they said, okay, this guy, he happened to be a police officer, but he could have been any public employee that was there, had control of the situation, failed to go in, and as a result, the rape occurred. They allowed that case to go forward. Obviously that's not... That's not the situation here. There were no police. No, no, but it wouldn't have mattered if it wasn't a policeman. I'm not saying... There wasn't even a school security person. I understand that, but it was a public employee who had control of the situation, which that is the children in the school, and then allowed them out. That, in Doe... That person was not a police person. It doesn't matter if he was a police person. He was a public... If he wasn't... If 4102 only applied to police, we wouldn't be having this. But the cases that you seem to select as an exception were cases in which there was a person there that had some sort of police indicia and the event occurred. But that would have been... But that's not the situation here. I understand, but those cases would have been a stronger argument for 4102 because they had police indicia, as opposed to this case where it's a public employee without police indicia who, under my theory of the legislator, my understanding of legislative intent, would not protect that individual in our case, but would have protected the individual in Decemet. And even though that individual had police indicia, 4102 was... An exception was carved out to say because that individual had control over the situation, he did act on that control, and a crime occurred, which was the injury, that 4102 did not bar that case. That's how I see this case. And I think that that's a stronger argument for 4102 because it was a police personnel involved that was still allowed to go forward than in this case where the board had... The agent of the board had control of the situation, was aware of the danger, and chose not to act willfully and wrongly disregarding the known risk. And that's the best way I can explain it, based on the status of the case law now and the exception that's been carved out. I mean, and Decemet comes... That goes, again, back to the special duty. And I know Zimmerman says no special duty 4102, but Doe and Decemet carve out that exception and say, well, there could... Even though they don't apply it in that situation. They still say it exists, and it clearly would exist here. And I don't believe that 4102 trumps that under these circumstances because the exception has been carved out in those cases. Thank you. Thank you. Thank you very much. Thank you. This case will be taken under advisement. The court is adjourned.